UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MAINE COAST MEMORIAL HOSPITAL,<br><br>      Plaintiff<br><br>      v.<br><br>KATHLEEN SEBELIUS, Secretary of the U.S. Department of Health and Human Services,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)   1:13-cv-00138-NT<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## RECOMMENDED DECISION ON CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

In this matter Maine Coast Memorial Hospital seeks judicial review, pursuant to 42 U.S.C. § 1395oo(f), of a decision of the Provider Reimbursement Review Board, which decision upheld a finding that Maine Coast Memorial does not qualify for special reimbursement as a "sole community hospital" under the Medicare Act and the Secretary's Medicare regulations. The matter is before the Court on cross-motions for judgment on the administrative record. (ECF Nos. 13 & 14.) The Court referred the motions for report and recommendation. For reasons that follow, I recommend that the Court grant the Secretary's motion, deny Maine Coast Memorial's motion, and affirm the Secretary's administrative decision.

### THE ISSUE

The parties present a single legal issue for the Court to resolve. The question is whether the Secretary has reasonably construed one of her regulatory criteria for qualifying as a sole community hospital. The regulation is designed to give effect to a statutory requirement that the

Secretary give better Medicare reimbursement rates to sole community hospitals under Title XVIII of the Social Security Act, Health Insurance for the Aged and Disabled.  In Title XVIII Congress defined the term "sole community hospital" to include:

> any hospital . . . that, by reason of factors such as the time required for an individual to travel to the nearest alternative source of appropriate inpatient care (in accordance with standards promulgated by the Secretary), location, weather conditions, travel conditions, or absence of other like hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to individuals in a geographic area who are entitled to benefits under part A.

42 U.S.C. § 1395ww(d)(5)(D)(iii)(II).  By regulation, 42 C.F.R. § 412.90(a), sole community hospital status is limited to certain kinds of inpatient hospitals, so called "section (d) hospitals" that receive payments on the basis of prospective rates pursuant to 42 U.S.C. § 1395ww(d).  For example, such status is unavailable to psychiatric hospitals, rehabilitation hospitals and certain other hospital classifications.  42 U.S.C. § 1395ww(d)(1)(B).

To determine whether a section (d) hospital qualifies as a sole community hospital, the Secretary prescribes varying criteria depending on the hospital's proximity to other like hospitals.  "The term like hospital means a hospital furnishing short-term, acute care."  42 C.F.R. § 412.92(c)(2).  If the hospital is between 25 miles and 35 miles from other like hospitals, as Maine Coast Memorial is, then one means of qualifying is to meet the Secretary's "no more than 25 percent" test, which reads:

> No more than 25 percent of residents who become hospital inpatients or no more than 25 percent of the Medicare beneficiaries who become hospital inpatients in the hospital's service area are admitted to other like hospitals located within a 35-mile radius of the hospital[.]

Id. § 412.92(a)(1)(i).

The parties agree that the test calls for a simple division computation designed to measure the fraction, or percentage, of inpatient services provided by "other like hospitals."  They also

agree that the two[1] like hospitals located within a 35-mile radius of Maine Coast Memorial admitted 459 Medicare beneficiaries[2] who resided within Maine Coast Memorial's service area during the fiscal year for which the data was compiled (2009).  Thus, 459 is the undisputed numerator of the fraction.  What the parties disagree about is the denominator.  According to Maine Coast Memorial, the denominator is 2,173, which is the total number of Medicare beneficiaries residing within Maine Coast's service area who were admitted to any area hospital (not just section (d) hospitals) for any inpatient care.  These beneficiaries include the beneficiaries who obtained services in the two psychiatric hospitals and two critical access hospitals mentioned in footnote 1, both of which are undisputedly non-like hospitals.  According to the Secretary, the denominator is 1,643, which represents the sum of the Medicare beneficiaries admitted by Maine Coast Memorial and by the two "like hospitals" referred to in footnote 1.  (Admin. R. at 13, ¶¶ 10-12.)

If the Secretary's position is correct, then Maine Coast Memorial is not a sole community hospital because other like hospitals within a 35-mile radius of Maine Coast Memorial admitted more than 25 percent of the Medicare beneficiaries who sought short-term, acute inpatient care from a section (d) hospital.  If Maine Coast Memorial is correct, then it is a sole community hospital because other like hospitals admitted fewer than 25 percent of the Medicare beneficiaries in Maine Coast Memorial's service area who sought inpatient care of any kind from any hospital within a 35-mile radius of Maine Coast Memorial.

---

[1]    There are two like hospitals within a 35-mile radius of Maine Coast Memorial:  Eastern Maine Medical Center and St. Joseph's Hospital, both in Bangor.  Also within the 35-mile radius are two psychiatric hospitals, the Acadia Hospital and the Dorothea Dix Psychiatric Center, and two "critical access hospitals," Blue Hill Memorial Hospital and Mount Desert Island Hospital.  (Admin. R. at 11-12 (setting forth stipulations presented to the Board).)

[2]    The actual number is higher, but certain beneficiaries were excluded because Maine Coast Memorial did not have the specialty services they required.  The exclusions favored Maine Coast Memorial.  (Admin. R. at 12-13, ¶¶ 6-10.)

3

## THE SECRETARY'S DECISION

Applications for sole community hospital status are submitted to a hospital's designated Medicare Administrative Contractor (MAC), which makes a recommendation to the Administrator of the Centers for Medicare and Medicaid Services (CMS). 42 U.S.C. § 1395kk-1(1), (4); 42 C.F.R. § 412.92(b)(1)(iv), (v). Hearings on appeal are available before the Provider Reimbursement Review Board. 42 C.F.R. § 405.1835. It is the hearing before the Board that generated the administrative record currently before the Court. Id. § 405.1865. The Board's decision must be in writing and must include findings of fact and conclusions of law. Id. § 405.1871. The Administrator of CMS has discretionary authority to review the Board's administrative decision. Id. § 405.1875. Absent such review, the Board's decision is final and providers have the right to judicial review of the Board's decision. 42 U.S.C. § 1395oo.

Maine Coast Memorial is a 48-bed, non-profit Medicare dependent hospital in Ellsworth, Maine. (Admin. R. at 10.) Maine Coast Memorial applied for sole community hospital classification. (Id.) In its application it claimed that it qualified for sole community hospital status because "like hospitals" located within a radius of 35 miles admitted only 21.1 percent of all area Medicare beneficiaries admitted for inpatient services in *any* hospital within a radius of 35 miles of Maine Coast Memorial. (Pl.'s Motion for Judgment at 4, ECF No. 13.) In computing this percentage, Maine Coast Memorial added into the denominator of the fraction several hundred Medicare beneficiaries admitted to critical access hospitals and psychiatric hospitals, thereby reducing the quotient below 25 percent.

The MAC denied the application because it determined that it was improper for Maine Coast Memorial to add into the denominator Medicare beneficiaries who received services at non-"like hospitals" and that the only beneficiaries who should be added into the denominator

4

were those beneficiaries admitted to Maine Coast Memorial and the two "like hospitals." (Admin. R. at 451.) Using Maine Coast Memorial's data, the MAC concluded that when the roughly 500 beneficiaries admitted to non-like hospitals are removed from the denominator, Maine Coast Memorial does not qualify as a sole community hospital because the quotient derived from the test exceeds 25 percent of the total number of patients admitted to all "like hospitals." (Id.) On this basis the MAC recommended that CMS deny the application. (Id.) CMS approved the recommendation. (Id. at 461.)

Maine Coast Memorial sought and obtained a hearing before the Board. (Id. at 5, 26.) Following hearing, the Board concluded that the regulation is ambiguous concerning how to apply the "no more than 25 percent" test; that CMS reasonably construes the regulation to calculate the percentage based on the total number of admissions among like hospitals only; and that this approach is consistent with the various statements found in final Medicare rules issued by the Department over the years. (Id. at 16-25.) Based on these findings and conclusions, the Board affirmed CMS's denial of Maine Coast Memorial's bid for sole community hospital status. (Id. at 25.) The Administrator of CMS declined to exercise discretionary review authority. (Id. at 1.) Maine Coast Memorial timely sought judicial review.

## STANDARD OF REVIEW

The Secretary's administrative decision is to be affirmed unless Maine Coast Memorial succeeds in demonstrating that it was arbitrary and capricious, an abuse of discretion, not in accordance with law, or lacks substantial evidentiary support. S. Shore Hosp. Inc. v. Thompson, 308 F.3d 91, 97 (1st Cir. 2002) (citing 5 U.S.C. §§ 706(2)(A), 2(E) in the context of reviewing a decision of the PRRB); see also id. at 101 ("The burden is on the party challenging the

Secretary's reasoning to show that it fails to pass muster[.]")  "This standard tightly circumscribes judicial review."  Id. at 97.

Additionally, because Congress has undisputedly "entrusted rulemaking and administrative authority" to the Department, the Department's interpretation of its regulations is an administrative function to which this Court should ordinarily defer, especially where, as here, the regulatory framework is "complex and highly technical" and "the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns."  Id. (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)).  "Courts withhold such deference only when the agency's interpretation of its regulation is 'plainly erroneous or inconsistent with' its language."  Id. (quoting Thomas Jefferson Univ., 512 U.S. at 512).

## DISCUSSION[3]

Maine Coast Memorial's argument is simple.  The argument is that deference to the Secretary's construction of the "no more than 25 percent" test is not appropriate because the plain language of the regulation unambiguously supports Maine Coast Memorial's position and therefore needs no interpretation.  (See Pl.'s Motion for Judgment at 12 (arguing for an analysis that begins and ends with the text of the regulation) & 15 (calling for a "plain grammatical parsing"); see also Pl.'s Responsive Memorandum at 1, ECF No. 19 (saying a "casual reading" resolves the issue, but also asserting that the dispute is about what the chosen language "envisions").)  I conclude that Maine Coast Memorial's approach has a certain elegance, but amounts to reductionism in the context of "the often surreal world of Medicare administration."  S. Shore Hosp., 308 F.3d at 94.

---

[3]     Although a number of courts have reviewed denials of applications for sole community hospital status, the parties do not cite, and I have been unable to find, trial court decisions or appellate court opinions that address the specific question raised by Maine Coast Memorial.

The language of the test is repeated here for ease of reference. The immaterial language is lined out.

> ~~No more than 25 percent of residents who become hospital inpatients or~~ no more than 25 percent of the Medicare beneficiaries who become hospital inpatients in the hospital's service area are admitted to other like hospitals located within a 35-mile radius of the hospital[.]

42 C.F.R. § 412.92(a)(1)(i).

Maine Coast Memorial's idea is that anyone should appreciate that the language expressed by the Department means that Maine Coast Memorial is a sole community hospital so long as the "other like hospitals" within 35 miles do not serve more than 25 percent of the Medicare beneficiary population admitted by any provider within a 35-mile radius of Maine Coast Memorial. This is certainly one grammatically appropriate reading of the statute. A reasonable person might well assume such a meaning if the language were presented in a vacuum and without any statutory or regulatory context. But we are in the surreal world of Medicare administration. A reasonable person who had spent a little time considering the statutory and regulatory framework that make up the Medicare payment provisions might just as readily conclude that use of the term "hospital inpatients" raises an interpretive question (*i.e.*, is ambiguous) and that the most reasonable meaning of the regulation is as follows:

> [N]o more than 25 percent of the Medicare beneficiaries who become [*like*] hospital inpatients in the hospital's service area are admitted to other like hospitals located within a 35-mile radius of the hospital.

In a nut shell, that is the gist of the Secretary's argument.[4] (See Def.'s Sur-Reply at 5-6; see also PRRB Decision, Admin. R. at 20.) The argument is a winner because, read in the context of the Act and the regulatory framework, the regulation is ambiguous and the construction imposed

---

[4] In place of the word "like," one might also insert the modifier "short-term, acute care." 42 C.F.R. § 412.92(c)(2). See also Prospective Payments for Medicare Inpatient Hospital Services, 48 Fed. Reg. 39752, 39781 (Sept. 1, 1983).

by the Department is consistent with its language and makes the most sense in the regulatory context.

## A. The Statute

Congress determined that "sole community hospitals" in rural areas should receive enhanced payments under the Medicare Act when they are the "sole source of inpatient hospital services reasonably available to individuals in a geographic area who are entitled to benefits under Part A." 42 U.S.C. § 1395ww(d)(5)(D)(iii)(II). With this statutory objective in mind, the Secretary's construction is eminently reasonable. The idea is to determine whether a rural, section (d) hospital[5] is the sole source of inpatient hospital services reasonably available within its service area. In other words, do Medicare beneficiaries who utilize the inpatient services of section (d) hospitals predominantly rely on the section (d) hospital seeking sole community hospital status or do more than 25 percent turn to other section (d) hospitals within a 35-mile radius? That is the logical concern that grows out of the statutory language, as the Secretary asserts. (Defendant's Sur-Reply at 4.) Once that groundwork is understood, it is implicit in the Secretary's chosen language that the idea is to measure the extent to which the applicant for sole community hospital status is the "sole," "like hospital" in its area.

In this statutory context, Maine Coast Memorial's interpretation of the regulation makes no sense. It makes no sense because it essentially means that when utilization of non-section (d) hospitals in the applicant's area increases, the applicant hospital actually stands a better chance of being regarded as a sole community hospital.[6] If any correlation should exist between sole

---

[5] Sole community hospital status is only available to so called "section (d) hospitals" that receive payments on the basis of prospective rates. 42 U.S.C. § 1395ww(d)(1)(A); 42 C.F.R. § 412.90(a).

[6] The Secretary's regulations support the idea that if certain non-section (d) hospitals (limited-service specialty hospitals) were included in the "like hospital" calculation, it would have the effect of undermining the effort of an area section (d) hospital to qualify as a sole community hospital. Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2003 Rates, 67 Fed. Reg. 49,982, 50,054 (Aug. 1, 2002) ("A limited-

8

community hospital status and the number of admissions at non-like hospitals, it should be that the likelihood of sole community hospital status decreases when non-like hospitals admit more of the Medicare beneficiary population. But the point of the Department's regulation is precisely *not* to make the "no more than 25 percent" test turn on the number of admissions at non-like hospitals. For that reason, the Secretary's construction of the "no more than 25 percent" test actually makes more sense than Maine Coast Memorial's construction.

B.      **"The Classification Procedures" (Other Regulatory Language)**

Maine Coast Memorial's response to this assessment is to ask why, if the foregoing is correct, does the Secretary require in its classification procedures that applicants provide "patient origin data **from all other hospitals** located within a 35 mile radius of it or, if larger, within its service area, to document that no more than 25 percent of either all of the population or the Medicare beneficiaries residing in the hospital's service area and hospitalized for inpatient care were admitted to other like hospitals for care." 42 C.F.R. § 412.92(b)(ii)(B) (emphasis added). If the Secretary's regulation does not aim to include the number of beneficiaries admitted at "all other hospitals," including non-section (d) hospitals, then why does the Secretary require applicants to supply that data? (Pl.'s Motion for Judgment at 12-16, 19; Pl.'s Responsive Memorandum at 2-3.)

The Secretary's answer to that question is not particularly satisfying, though it passes the straight face test. The Secretary says that the classification procedures were "not meant to affect and/or alter the 'no more than 25 percent' test in 42 C.F.R. § 412.92(a)(1)(i)." (Def.'s Sur-Reply at 5.) As the PRRB put it, the fact that the data is required "does not mean that the denominator

---

service, specialty hospital, by definition, would not offer an alternate source of care in the community for most inpatient services and therefore, we believe, should not be considered a 'like' hospital with the effect of negating SCH status of a hospital that is the sole source of short-term acute care inpatient services in the community."). This reinforces the understanding that the "no more than 25 percent" test is meant to be a market share test that compares only area short-term acute care hospitals.

must necessarily include *all* of the §412.92(b)(1)(ii)(B) admissions data from all hospitals (both like and unlike)." (Admin. R. at 20.) This is a fair response when one considers that not all of the admission data that disfavored Maine Coast Memorial was used in the "no more than 25 percent" test. For example, Maine Coast Memorial submitted data concerning Eastern Maine Medical Center and St. Joseph indicating that they actually had more admissions than were factored into the test (thereby decreasing the numerator of the fraction to Maine Coast Memorial's benefit). (See *supra* note 2.) Ultimately, the fact that the Secretary requires the provision of data that might be used in the "no more than 25 percent" test as Maine Coast Memorial reads it is not the trump card that Maine Coast Memorial feels it is. Unfortunately, bureaucracies often do require the provision of data that is not directly tied to the issue at hand. Ultimately, the language that governs the test is the language related to "criteria for classification" found in subsection 412.92(a)(1)(i), not the language of the "classification procedures" found in subsection 412.92(b). The criteria language is ambiguous in its use of "hospital inpatients" and the Secretary reasonably construes that language to be a reference to "like hospital inpatients," despite her classification procedures.

**C.     Continuity with Earlier Rules**

In further support of her construction, the Secretary explains at some length that the current regulatory language grows out of a long tradition of classifying sole community hospitals based on their share of the "like hospital" market, a tradition that has been acknowledged in the Secretary's prospective payment rules since 1983. (Def.'s Memorandum at 12-18.) This explanation provides much of the regulatory context in support of the Secretary's construction of its current "no more than 25 percent" test. The highlight of this otherwise dry administrative

history is that, in 1988, the Department issued a final rule which modified the "no less than 25 percent" test to insert the ambiguous language now in contention.

Prior to the modification, the "no more than 25 percent" test simply read: "no more than 25 percent of the Medicare beneficiaries in the hospital's service are admitted to other like hospitals for care." Prospective Payment for Medicare Inpatient Hospital Service, 49 Fed. Reg. 234, 319 (Jan. 3, 1984). The 1988 modification inserted the "who become hospital inpatients" phrase to modify "Medicare beneficiaries," thereby attempting "to clarify that a hospital seeking [sole community hospital] status must show that during the cost reporting period ending before it files for [sole community hospital] status, it admitted at least 75 percent of all the hospitalized residents or 75 percent of all the Medicare beneficiaries *who were admitted to any like hospital* located within [the applicable area]." Changes to the Inpatient Hospital Prospective Payment System and Fiscal Year 1989 Rates, 53 Fed. Reg. 38,476, 38,511-12 (Sept. 30, 1988) (emphasis added).

Also telling are additional regulatory references in 1989 and 2002. In 1989 the Department referred to the test as a "75 percent market share standard" and decided that it would "eliminate the market share test for hospitals located more than 35 miles from a like hospital," where previously the test examined data from like hospitals within 50 miles. Changes to the Inpatient Hospital Prospective Payment System and Fiscal Year 1990 Rates, 54 Fed. Reg. 36,452, 36,481 (Sept. 1, 1989). In 2002, the Department further reinforced this understanding with a comment that the purpose of any sole community hospital test is "to identify those hospitals that are truly the sole source *of short-term acute-care inpatient services* in the community." Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2003 Rates, 67 Fed. Reg. 49,982, 50,054 (Aug. 1, 2002). In Department parlance, "short-term

11

acute care" is another way of describing "like" hospitals. 42 C.F.R. § 412.92(c)(2). Obviously, including in the denominator of the "no more than 25 percent test" all admissions from every hospital in the 35-mile radius, regardless of type, would not accurately represent the share of "short-term acute-care inpatient services" provided by an applicant for sole community hospital status.

Thus, there is a long-standing understanding expressed in the Department's rules—and no doubt applied over the course of decades to assess many applications for sole community hospital status—that the "no more than 25 percent" test is designed to determine whether competing like hospitals within a specified range of the applicant hospital service more than 25 percent of the Medicare beneficiaries admitted for short-term acute-care inpatient services. Maine Coast Memorial has not provided evidence that it can satisfy that test. Nor has it provided evidence of any contrary intent expressed in the rules or contrary application in past practice.

## Conclusion

The language of the current "no more than 25 percent" test, read in context, invites the Secretary's construction and that construction is neither plainly erroneous, nor arbitrary and capricious, nor abusive of the Secretary's considerable discretion to administer the complex, highly-technical, and policy-driven Medicare program. For that reason, I recommend that the Court GRANT Defendant's Motion for Judgment on the Administrative Record (ECF No. 14), DENY Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 13), and AFFIRM the Secretary's administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the

district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

  Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

November 13, 2013      /s/ Margaret J. Kravchuk
               U.S. Magistrate Judge